**James HALL and James Hall, Jr., d/b/a James Hall & Son et al., Appellants,**

**v.**

**McDUFFEE MOTOR FREIGHT, INC., et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 2, 1968.

Rehearing Denied May 24, 1968.

Robert M. Pearce, Bowling Green, Louis J. Amato, Frankfort, William A. Young, Virgil Gaitskill, Jr., Department of Motor Transportation, Frankfort, for appellants.

Harry V. McChesney, Jr., McChesney & Kinker, Fred F. Bradley, Frankfort, for appellees.

WADDILL, Commissioner.

This is an appeal from a judgment setting aside so much of an order of the

Commissioner of Motor Transportation (hereinafter called commissioner) as enlarged the cartage authorization which had been granted by the Department of Motor Transportation to appellants, James Hall and James Hall, Jr., d/b/a James Hall & Son, a commercial trucking firm.

This action was initiated by a complaint being filed with the Department of Motor Transportation of Kentucky (hereinafter referred to as department) by appellees, who are Halls' competitors, seeking to: (1) cause the Halls to cease handling freight not authorized by their contract carrier permit; (2) revoke this permit for having been issued by the department without a public hearing and (3), revoke all of Halls' cartage privileges as its being an unfit carrier. The Halls denied these charges and applied for clarification of their contract carrier permit so as to entitle them to continue their present cartage operations. The Halls filed copies of their existing contracts with their customers, presumably under departmental Regulation 6.04 which requires every contract carrier authorized to operate in Kentucky to file its employment contracts with the department and to show that its rates and charges are comparable to those charged by common carriers for similar services.

We will summarize the relevant facts found by the examiner for the department and accepted by the commissioner. The Halls have been engaged in the cartage business since the 1930's. For many years prior to the present controversy the Halls had hauled many diverse items such as frozen and ready-to-eat foods, hardwares, chemicals, and grains for numerous customers. Sometime between 1932 and 1940 the department issued a contract carrier permit to the Halls. This permit has been renewed annually and the existent copies list only one customer (Kentucky Utilities) and four items to be hauled (feed, fertilizer, ice and frozen food. It is conceded that the Halls had throughout the years of their hauling operations transported numerous items of freight which were not specifically

set forth in their permit. Upon these facts the examiner found that the Halls were issued a valid contract carrier permit and the specific authority granted in it, not being ambiguous, is determinative of the Halls' cartage operations. Accordingly, he recommended that the Halls be found guilty of transporting unauthorized commodities but that no disciplinary action be imposed; that contracts in excess of the Halls' permit authority be disapproved and that certain other contracts be disapproved for inadequate rates subject to an opportunity to renegotiate the rates.

While the commissioner accepted the findings of fact made by the examiner, he rejected the examiner's recommendation. The commissioner filed a written opinion in which he found that when the Halls first received their permit it may have been the custom, unsupported by statute or regulation, to list on the permit only representative commodities to be hauled. Hence, it was his opinion that the four items listed on the Halls' permit would authorize them to haul all similar or related commodities. He found that the Halls' permit is valid but that the department had been lax in permitting the Halls to operate in excess of their authorization. He concluded their permit should be reissued to conform to the actual business they had been doing and that the Halls should submit all of their employment contracts to the department for review. A final order was entered effectuating his findings and conclusion.

On appeal to the circuit court (KRS 281.780 and 281.785) this order was set aside and it was held that the commissioner had exceeded his authority. He was directed to enter a new order which, in effect, will limit the authority under the Halls' permit to the items specifically stated in it.

On appeal to this court the Halls contend that under the provisions of KRS 281.665 they are entitled to the broad authority granted them by the commissioner. However, subsection (1) of this

statute merely permits the reissuance of permits previously issued and subsection (2) specifically limits the authority under a new permit to that which was previously held.

In issuing permits to a contract carrier the department is required to "specify in the permit the business of the contract carrier covered thereby and the scope thereof." KRS 281.630(4). It is apparent that the evidence presented is wholly inadequate to entitle them to the relief they seek to obtain by grandfathering pursuant to KRS 281.665.

Since the contract carrier permit was held valid and there is no cross-appeal, it is unnecessary to decide whether the Halls' contract carrier permit was unlawfully issued by the department.

We conclude the circuit court properly restricted their authority under this permit to the specific terms appearing on its face.

The judgment is affirmed.

All concur except PALMORE, J., not sitting.